## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:19-CV-2304-L** |
| **ASSISTED LIVING CONCEPTS, LLC d/b/a Enlivant and North Brook Place,** | § § § | |
| Defendant. | § § | |

### CONSENT DECREE

Before the court is the parties' Consent Decree (Doc. 17), filed April 24, 2020.  The court determines that the Consent Decree should be, and is hereby, accepted and issued as the Final Judgment in this action.  Accordingly, the parties are **directed** to abide by and adhere to the terms and conditions herein set forth.

This Consent Decree is made and entered into by and between the Equal Employment Opportunity Commission ("EEOC") and Enlivant Master Mgmt Co. LLC, d/b/a Enlivant and successor to Assisted Living Concepts, LLC previously operating a community formerly known as North Brook Place (*hereinafter*, "Defendant" or "ALC/Enlivant") in the United States District Court for the Northern District of Texas, Dallas Division, with regard to the EEOC's Complaint filed in Civil Action 3:19-CV-2304-L.  The Complaint was based upon a Charge of Discrimination filed by Meeka Henderson against Defendant.

The above-referenced Complaint alleges that Defendant discriminated against Meeka Henderson in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.,

**Consent Decree - Page 1**

as amended (the "ADA"), by failing or refusing to make a reasonable accommodation of her disability that resulted in her termination.  Defendant denies these allegations.

EEOC and Defendant agree to compromise and fully and finally settle the differences embodied in the Complaint filed by EEOC and intend that the terms and conditions of the compromise and settlement be set forth in this Consent Decree, which is issued as the Final Judgment.

**Now, therefore**, in consideration of the mutual promises and agreements set forth herein, the sufficiency of which is hereby acknowledged, the parties agree as follows, and which the court finds appropriate, it is **ordered, adjudged and decreed** that:

1.     This Consent Decree resolves all issues raised in EEOC Charge No. 450-2017-02536.  This Consent Decree further resolves all issues in the Complaint filed by the EEOC in this civil action.   The EEOC waives further claims and litigation on all issues raised in the above-referenced Charge and Complaint. The EEOC does not waive processing or litigating Charges other than the above-referenced Charge.

2.     This Consent Decree is a settlement of the disputes of claims and defenses in this civil action, and shall not be deemed an admission by Defendant of any violation of the ADA. Defendant denies any liability for any and all claims contained in the Complaint and denies that it has violated the ADA in any manner.

3.     During the term of this Consent Decree, Defendant, its officers, agents, successors and other persons in active concert or participation with it, are enjoined from any employment practice that discriminates on the basis of disability with respect to recruitment, placement, hiring, termination, or any other employment action, and Defendant further agrees not to retaliate in any way against any person because of opposition to any practice declared unlawful under the

**Consent Decree - Page 2**

Americans with Disabilities Act of 1990, as amended, or because of the filing of a charge, giving testimony, or assisting or participating in any manner in any investigation, proceeding or hearing.

4.      For purposes of the terms of this Consent Decree, the parties acknowledge that EEOC is relying on the following representations by Defendant with regard to its current business status as an employer:

(a) ALC/Enlivant represents that its status as an employer, as relates specifically to the claims of this civil action, changed in April 2019 with the sale of its entire business operations in McKinney, Texas, which previously operated under the name "North Brook Place."

(b) ALC/Enlivant represents that it no longer owns, operates, manages or otherwise represents the business at North Brook Place, and that ALC/Enlivant did not retain any of the officers, managers, human resource personnel, or other employees that had been employed with its former business operation at North Brook Place.

(c) ALC/Enlivant represents that the purchaser of its former business located at North Brook Place is Elmington Senior Living.  ALC/Enlivant and Elmington Senior Living are completely separate business entities that are and always have been unaffiliated with each other.  Elmington Senior Living is currently operating the business formerly known as North Brook Place and now known as Cariad at North Brook.

(d) ALC/Enlivant represents that it does not currently or expect at any time in the future to share ownership, management, business operations, human resources personnel, decisionmakers, employees or any other resources with Elmington Senior Living.

**Consent Decree - Page 3**

(e) ALC/Enlivant represents here that it has no ability or authority to enter into any form of specific performance or injunctive relief on behalf of the business entity that purchased ALC/Enlivant's business at North Brook Place.

5.      Within six (6) months from the effective date of this Consent Decree, Defendant shall review its ADA Reasonable Accommodation policy to ensure that, pursuant to EEOC's priorities raised in the claims in the Charge and Complaint underlying this action,  it recognizes all forms of reasonable accommodation for any physical or mental impairment that constitutes a disability under the ADA.  Specifically, Defendant's policy will recognize that a reasonable accommodation is, generally, any change in the work environment or in the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities. Reasonable accommodations may include, for example, making modifications to existing job duties, reassignment, light duty, scheduling, and return-to-work policies when appropriate.  As with any other accommodation, the goal of accommodation is to afford employees with disabilities equal employment opportunities.

6.      Within thirty (30) days following the entry of this Consent Decree, and for each year thereafter for the duration of this Decree, Defendant shall electronically distribute the Notice appended hereto as Attachment "A" to all Human Resources Directors and Human Resources Managers.  Within fourteen (14) days after the initial distribution, Defendant will report to the EEOC that it has complied with the requirements of this paragraph regarding the required posting.

7.      Defendant acknowledges and agrees that pregnancy-related impairments may constitute disabilities under the Americans with Disabilities Act.  Defendant shall treat requests involving an employee's or applicant's hysterectomy and the recovery related thereto as an impairment that may be covered as a "disability" under the ADA in that it substantially limits a

**Consent Decree - Page 4**

major life activity that includes, but is not limited to, endocrine, digestive and reproductive bodily functions. Defendant acknowledges that this medical procedure and the recovery period associated with any treatment of the procedure may be considered as a disability-related condition and is appropriate for consideration of reasonable accommodation under the ADA.

8.      Defendant will not require that employees on medical leave be released by their physician "without restrictions" or "restriction free" before being allowed to return to work. Employees will not be required to submit documents or other forms of release by their physicians that release them to work with "no restrictions" or reflecting that they are "100% healed." When an employee with an impairment covered by the ADA seeks to return to work with some limitations or restrictions, Defendant will engage in the interactive process contemplated by the ADA for determining whether a reasonable accommodation can be made for the employee to return to employment without undue hardship to the employer and/or direct threat to safety of the employee or others.

9.      For each year that the Consent Decree is in effect, Defendant will ensure that human resources managers, human resources directors, and any other employee responsible for administering leaves and accommodation requests receive training advising them of the requirements and prohibitions of the federal anti-discrimination laws with respect to the ADA. To build upon its ability to effectively respond to accommodation issues under the ADA, ALC/Enlivant will be strategically partnering with a third-party administrator to provide leave and accommodation administration, which is expected to begin May 1, 2020, and as such partnership may continue at ALC/Enlivant's sole discretion.

During the time subsequent to the dates of the matters that gave rise to this civil action, Defendant has been working diligently to enhance its human resource responsiveness and expertise

**Consent Decree - Page 5**

internally as well.  For instance, ALC/Enlivant is ensuring that its Human Resources Directors (HRDs) and Managers (HRMs) are engaged in review of requests for accommodation and responsible for medical leave approval and accommodation requests.  The HRDs and HRMs are currently engaged in on-going training, and have been supported by Defendant's hiring of internal employment counsel to provide guidance. The team of employment law and human resource personnel timely reviews and discusses matter that may arise, including those which present issues under the ADA.  As recently as 2020, the ALC/Enlivant team has pursued professional enrichment opportunities with a focus on the ADA and workplace inclusion of persons with disabilities. During the term of this Consent Decree, Defendant will make plans for providing a form of online training to its managers and supervisors that will include a component regarding non-discrimination and the ADA.

10.     Defendant's representatives who the EEOC concluded had been directly involved in decisions allegedly denying Ms. Henderson a reasonable accommodation have separated from ALC/Enlivant subsequent to the dates of the matters that gave rise to this civil action.

11.     Defendant shall advise all managers and supervisors of their duty to ensure employees' compliance with Enlivant's policy against discrimination on the basis of disability, and to report any incidents or complaints of discrimination, on the basis of disability, of which they become aware to the persons charged with handling such complaints.  Failure to meet such expectations will be considered for appropriate discipline.

12.     To the extent that Defendant still has possession of the personnel file of Meeka Henderson, it shall endeavor to remove all documents, entries and references relating to the facts and issues underlying the Charges of Discrimination and this lawsuit. If Defendant is legally required to keep any part of such information, it shall be maintained separately with Defendant's

counsel, and will not be made available to any officer or employee of Defendant with respect to any employment reference inquiries or other requests by non-governmental third parties. If there is any inquiry from a third party for employment reference inquiry with an appropriate release from Meeka Henderson, Defendant will provide her last position and dates of employment reflecting a voluntary resignation.

13.     Defendant shall pay to Meeka Henderson the full and final gross sum of $66,334.31 for backpay and for compensatory damages and all other damages recoverable under the Americans with Disabilities Act, as amended, and 42 U.S.C. 1981a of the Civil Rights Act of 1991. Standard legal deductions shall be made from the gross amount of $9,476.33, which shall be designated as lost wages and for which an IRS Form W-2 shall be issued. No deductions shall be made from the remaining balance of non-wage damages for claims under the 42 U.S.C. §1981 to be paid in the amount of $56,857.98 and for which an IRS Form 1099 shall be issued. Meeka Henderson will be responsible to pay all taxes that may be applicable on amounts received, and ALC/Enlivant shall have no liability for any tax consequences of the payments made. *In light of the current COVID-19 situation, the payments referenced above shall be made within 28 days after the effective date of this Consent Decree by check made payable to Meeka Henderson; however, Defendant will endeavor in good-faith to have such payments processed within 14 days of the effective date of this Consent Decree*. Defendant agrees to report to the EEOC within thirty (30) days of entry of this Consent Decree regarding its compliance with this paragraph.

14.     All reports to the EEOC required by this Consent Decree shall be sent to Mr. Joel Clark, Senior Trial Attorney, EEOC, 207 South Houston Street, Third Floor, Dallas, Texas 75202, joel.clark@eeoc.gov.

**Consent Decree - Page 7**

15.     If Defendant fails to tender payment or otherwise fails to timely comply with the terms of paragraphs above, Defendant shall, as applicable.

      a.    Pay interest at the rate calculated pursuant to 26 U.S.C. Section 6621(b) on any untimely or unpaid amounts; and

      b.    Bear any additional costs incurred by the EEOC caused by the non-compliance or delay of Defendant.

16.     Neither the EEOC nor Defendant shall contest the validity of this Consent Decree, nor the jurisdiction of the federal district court to enforce this Consent Decree and its terms, or the right of either party to the Consent Decree to bring an enforcement action upon breach of any term of this Consent Decree by either party.  The court retains jurisdiction over this action to enforce the terms of the Consent Decree.  Nothing in this Consent Decree shall be construed to preclude the EEOC from enforcing this Consent Decree in the event that Defendant fails to perform the promises and representations contained herein. The EEOC shall be authorized to seek compliance with the Consent Decree through civil action in the United States District Court.  The EEOC also reserves the right to seek costs and sanctions for non-payment and non-compliance with this Consent Decree.

17.     The parties to this Consent Decree agree to bear their own costs and attorney's fees associated with the above-referenced Complaint.

18.     The term of this Consent Decree shall be for two (2) years, at which time it shall expire by its own terms without further action by the parties.

**Consent Decree - Page 8**

**It is so ordered** this 27th day of April, 2020.

Sam A. Lindsay
United States District Judge

AGREED AS TO FORM AND SUBSTANCE:

**FOR THE PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION:**

SHARON FAST GUSTAFSON
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

JAMES LEE
Deputy General Counsel

/s/ Robert A. Canino
ROBERT A. CANINO
Regional Attorney
Oklahoma Bar No. 011782

/s/ Suzanne M. Anderson
SUZANNE M. ANDERSON
Supervisory Trial Attorney
Texas Bar No. 14009470

/s/ Joel Clark
JOEL CLARK
Senior Trial Attorney
Texas State Bar No. 24050425

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Dallas District Office
207 South Houston Street 3rd Floor
Dallas, Texas 75202
Tel No. (214) 253-2743
Fax No. (214) 253-2749

**Consent Decree - Page 9**

**FOR DEFENDANT ASSISTED LIVING CONCEPTS D/B/A ENLIVANT AND NORTH BROOK PLACE**

<u>/s/ Noah A. Frank</u>
NOAH A. FRANK
Senior Corporate Counsel
ENLIVANT
330 N. Wabash – Ste. 3700
Chicago, IL 60611
Tel. (312) 753-7053
Illinois Bar No. 6295011

## Exhibit A

## NOTICE TO ALL HUMAN RESOURCES MANAGERS AND DIRECTORS

**This NOTICE will be electronically distributed to all Human Resources Managers and Directors.**

**PURPOSE:** It is the purpose of this policy to reaffirm and amplify the position of the Americans With Disabilities Act of 1990, as amended (the "ADA"), and the Equal Employment Opportunity Commission's guidelines and to reiterate Enlivant's policy prohibiting disability discrimination.  Discrimination of any kind can and often will detract from employees' job performance, discourage employees from remaining on the job, keep employees from advancing in their careers and lower overall employee morale and productivity.  It is the policy of Enlivant that discrimination is unacceptable and will not be condoned.

**SCOPE**: This policy extends to all employees of Enlivant, both management and non-management.

**PREVENTING DISABILITY DISCRIMINATION:**   An employer may not discriminate against qualified applicants or employees on the basis of disability.  Under the ADA, an individual with a disability is an employee who (a) has a physical or mental impairment that substantially limits one or more major life activities; (b) has a record of impairment or (c) is regarded as having such impairment.  The ADA also prohibits discrimination against a person because of their association or relationship with an individual with a known disability.  This prohibition covers all aspects of the employment process, including:

| | | | |
|---|---|---|---|
| * | application | * | promotion |
| * | testing | * | medical examinations |
| * | hiring | * | layoff/recall |
| * | assignments | * | termination |
| * | evaluation | * | compensation |
| * | disciplinary actions | | |

Further, under the ADA, an employer must make a reasonable accommodation to the known physical or mental limitations of a qualified applicant or employee with a disability unless it can show that the accommodation would cause an undue hardship on the operation of its business, including if it would pose direct threat to safety of the employee or others.  Some examples of reasonable accommodation include:

- making existing facilities used by employees readily accessible to, and usable by, an individual with a disability;
- job restructuring;
- modifying work schedules;
- reassignment to a vacant position;
- acquiring or modifying equipment or devices; or
- providing qualified readers or sign language interpreters

Defendant recognizes that a reasonable accommodation is, generally, "any change in the work environment or in the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities. This can include making modifications to existing reassignment, light duty, scheduling, or return-to-work policies.  The goal of providing reasonable accommodation is to afford employees with disabilities equal employment opportunities.

**Consent Decree - Page 11**

**RESPONSIBILITY:** Each level of management is responsible for ensuring that all personnel policies, procedure, and activities are in full compliance with applicable federal, state, and local equal employment laws, statute, rules, and regulations regarding discrimination and retaliation.  Employees are expected to read, understand, and follow the policies that Enlivant has established to prevent discrimination and retaliation.

**REPORTING PROCEDURES:**  Any employee who believes that he or she has been subjected to discrimination is expected to report the conduct as soon as possible to either that person's immediate supervisor, his or her Human Resources Manager or Human Resources Director, or to the Enlivant Employee Hotline (844-ENLIVANT). Supervisors and managers who are informed of an alleged incident of discrimination, including harassment, must immediately notify his or her Human Resources Manager or Human Resources Director.

A person either, alternatively or in addition to reporting such an allegation to company officials, may contact the U.S. Equal Employment Opportunity Commission for the purposes of filing a charge of employment discrimination.  The address and telephone number of the U.S. EEOC office is 207 South Houston, Dallas, Texas 75202; (800) 669-4000.  Information about your rights and how to file a charge is available on the Internet at www.eeoc.gov.

**INVESTIGATION OF COMPLAINTS**: A complete investigation of each complaint will be undertaken immediately by the Human Resources Department.  The investigation may include interviews of all employees and supervisors at the facility, the inspection of documents, including personnel records, and full inspection of the premises.

**PUNISHMENT FOR VIOLATION:** Employees found to have engaged in discriminatory conduct, including supervisors and managers, can expect serious disciplinary action, depending on the circumstances, from a written warning in his or her personnel file up to and including termination of employment.

**NON-RETALIATION:** There shall be no retaliation against any employee because that person has opposed what they believe to be unlawful employment practices, or has filed a charge of discrimination, or has given testimony, assistance, or has participated in any manner in any investigation, proceeding or hearing under the ADA.

**PROTECTION OF PRIVACY:** The question of whether a particular action or incident constitutes discrimination requires a determination based on all available facts.  Enlivant will therefore make a concerted effort to protect the privacy of all personnel.

Signed this _____ day of April, 2020.


_____
On Behalf of Enlivant

**Consent Decree - Page 12**